## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **CHARLES M. ANDREWS, TRUSTEE OF THE GLORIA M. ANDREWS TRUST DATED APRIL 23, 1998** | **CASE NO. 1:20-CV-00058** |
| **Plaintiff,** | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| **CITY OF MENTOR, OHIO,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendant.** | |

Currently pending is Defendant City of Mentor's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c), filed on June 26, 2020.  (Doc. No. 13.)  Plaintiff Charles M. Andrews, Trustee of the Gloria M. Andrews Trust Dated April 23, 1998, filed a Memorandum in Opposition on July 14, 2020.  (Doc. No. 14.)  Defendant filed a Reply in Support of its Motion for Judgment on the Pleadings on July 20, 2020.  (Doc. No. 16.)

For the following reasons, Defendant's Motion for Judgment on the Pleadings (Doc. No. 13) is GRANTED.   However, within fourteen days of the date of this Memorandum Opinion and Order, Plaintiff may file an amended complaint to supplement the allegations associated with his Equal Protection Clause claim only.

## I.     Procedural History

On January 10, 2020, Charles M. Andrews, Trustee of the Gloria M. Andrews Trust Dated April 23, 1998 (hereinafter "Plaintiff" or the "Trust") filed a Complaint for Declaratory Judgment, Compensatory Damages, Punitive Damages and Attorney Fees and Costs Pursuant to 42 U.S.C. § 1983, *et seq.* against the City of Mentor, Ohio (hereinafter "Defendant" or the "City").  (Doc. No. 1.)

Therein, the Trust alleged four claims: (1) that the Trust was entitled to a Declaratory Judgment that the present zoning as applied to the Trust's property was arbitrary, capricious, unreasonable, confiscatory, and unconstitutional, and renders the Property economically non-viable, and that the zoning as applied failed to substantially advance the legitimate governmental interest in residents' welfare; (2) that the Trust was entitled to a Declaratory Judgment that the present zoning of the Trust's property is invalid under the Fifth and Fourteenth Amendments because it amounts to a taking of the Trust's property without due process of law, was arbitrary and capricious, and denies the Trust equal protection of the law; (3) that the Trust be awarded compensatory damages because the City confiscated the Trust's property by refusing to rezone the property; and (4) that the Trust be awarded punitive damages because the City intentionally confiscated the Trust's property with callous disregard when it refused to rezone the property to a higher density designation. (*Id.* at ¶¶ 43-62.)

On May 18, 2020, the City filed an Answer to the Trust's Complaint. (Doc. No. 12.) The City denied each of the Trust's claims. (*Id.* at ¶¶ 43-62.)

On June 26, 2020, the City filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c). (Doc. No. 13.) In its Motion, the City moved for judgment on the pleadings in its favor on each of the Trust's claims. (*Id.* at PageID# 113.) On July 14, 2020, the Trust filed a Memorandum in Opposition to the City's Motion, to which the City filed a Reply in Support of its Motion for Judgment on the Pleadings on July 20, 2020. (Doc. Nos. 14, 16.) Thus, the Defendant's Motion is now ripe and ready for resolution.

## II. Factual Allegations

The Complaint contains the following factual allegations. Charles M. Andrews is the appointed Trustee for the Gloria M. Andrews Trust Dated April 23, 1998. (Doc. No. 1 at ¶ 1.) The

2

Trust owns "three contiguous parcels of real property located at 8180 and 8188 Garfield Road, Mentor, Ohio . . . " ("the Property").  (*Id.* at ¶ 16.)  Altogether, the Property spans 16.15 acres.  (*Id.*)  The Property is currently zoned as an "R-4 Single Family Residential District [which] allows for single-family residential development on minimum one-half [ ] acre lots with no designated open space required."  (*Id.* at ¶ 6.)

In August 2019, the Trust proposed developing a higher density subdivision, known as Echo Hill Manor, on the Property, consisting of forty new single-family residences in all.  (*Id.* at ¶ 28.)  However, the Property's current zoning designation, R-4, would not permit such dense development on the Property.  (*Id.*)  Thus, the Trust requested that the City rezone the Property from R-4 to a higher-density designation known as RVG.  (*Id.* at ¶ 39.)  RVG Districts permit single-family housing to be built at a density of two and one-half units per acre, a higher density than R-4 Districts.  (*Id.* at ¶¶ 6, 7.)  If the Trust succeeded in developing Echo Hill Manor at a higher RVG density, the Trust anticipated sales around $4 million "and, after accounting for development costs, [ ] a net profit to the Trust."  (*Id.* at ¶ 33.)  If the Trust attempted to develop Echo Hill Manor at the lower R-4 density, the Trust anticipated sales around $1.5 million "and, after accounting for development costs, [ ] a net loss to the Trust."  (*Id.* at ¶ 41.)  The Trust also believed that smaller lots appealed to prospective buyers and larger one-half acre lots were less desirable to prospective buyers. (*Id.* at ¶ 42.)  According to Plaintiff, an empty half-acre lot remained unsold in an adjacent subdivision fifteen years after the subdivision was developed.  (*Id.* at ¶ 42.)

The Trust believed that the City would grant its rezoning request because, prior to the Trust's rezoning request in August 2019, the City had not rejected a rezoning request for RVG or Planned Development Overlay District ("PD District," a higher-density zoning designation than RVG)

designation since 2004.  (*Id.* at ¶ 15.)  Further, the Trust believed that its rezoning request aligned with the City's stated development objectives in the City's Comprehensive Plan, which the Mentor City Council adopted in 2011.  (*Id.* at ¶¶ 10, 11.)  According to the Comprehensive Plan, the City sought to encourage and incentivize development of higher-density RVG districts.  (*Id.* at ¶ 11.)

On August 2, 2019, the Trust requested that the Property be rezoned from R-4 to RVG.  (*Id.* at ¶ 28.)  On August 22, 2019, the City Planning and Development Department issued a Staff Report to the City Planning Commission.  (*Id.* at ¶ 35.)  The Trust alleges that the Staff Report confirmed that the submitted Echo Hill Manor Subdivision plat complied with RVG density requirements and that the Report "did not include a denial recommendation to the Planning Commission and, conversely, implicitly recommended approval" subject to certain proposed conditions.  (*Id.* at ¶ 36, 37.)

On August 22, 2019, "the City Planning Commission unanimously recommended that the requested rezoning of the Property for the Proposed Echo Hill Manor subdivision be denied . . . ." (*Id.* at ¶ 38.)  Thereafter, on November 6, 2019, the Mentor City Council voted 4-3 to adopt the City Planning Commission's recommendation, thus denying the Trust's request to rezone the Property from R-4 to RVG.  (*Id.* at ¶ 39.)

Following the City's denial of the Trust's request, the Trust filed the instant Complaint on January 10, 2020.

## III.    Standard of Review

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing

4

party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings.  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011).  In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555–556, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679, 129 S.Ct. 1937.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific

5

facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

**IV.  Analysis**

To establish liability against the City under 42 U.S.C. § 1983, the Trust must prove two basic elements: first, that a constitutional violation occurred, and second, that the City is responsible for that violation.  *Graham v. County of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004) (citing *Monell v. Dep't. of Social Servs.*, 436 U.S 658, 694, 98 S.Ct. 2018, 56 L.3d.2d 611 (1978)).  The Trust alleges that the City violated its Fifth and Fourteenth Amendment rights.  (Doc. No. 1 at ¶¶ 43-62.)  The Court will address each of the Trust's counts in turn.

**A.  Count One**

In Count One, Plaintiff alleges that the current R-4 zoning restriction on the Property is invalid because, as applied, it is "arbitrary, capricious, unreasonable, confiscatory, and unconstitutional, and renders the Property economically non-viable as zoned."  (*Id.* at ¶ 46.)  The Trust also alleges that the current R-4 zoning restriction does not "substantially advance a legitimate governmental interest" in the welfare of the City's residents.  (*Id.* at ¶ 47.)

The City argues that judgment should be issued in its favor on all four claims, including Count 1.  (Doc. No. 13 at PageID# 120.)  The City argues that the Trust's claims overlap significantly and

6

do not clearly articulate the theories which support its claims, but that "all are explicitly brought under the Fifth and/or Fourteenth Amendments . . . ." (*Id.*)  The City argues that all of the Trust's claims fail because the Trust "lacks a constitutionally-protected interest in the Property as rezoned and has no right to compel Mentor to grant its discretionary rezoning request." (*Id.*)  Specifically, the City argues that the Trust's due process claims fail because, to support a substantive due process claim, the Trust must establish the "existence of a constitutionally protected property or liberty interest," and to support a procedural due process claim, the Trust must establish that it "has a life, liberty, or property interest protected by the due process clause of the 14th Amendment." (*Id.* at PageID# 121.) The City argues the Trust cannot establish either because the Trust did not have a constitutionally protected property interest in the Property as rezoned to RVG. (*Id.*)  Further, the City argues that the Trust's takings claim fails for the same reason, namely that the Trust "has never had an interest in the property zoned as an RVG District, thus it is impossible for this interest to be taken away." (*Id.* at PageID# 126.)

In its Memorandum in Opposition, the Trust argues that the City fails to address any arguments relative to the Trust's Count One that the R-4 Zoning as applied to the Property is unconstitutional and fails to "substantially advance the legitimate governmental interest of the health, safety, morals, or welfare of the residents of the City, is arbitrary, capricious, unreasonable and confiscatory and renders the Property economically non-viable." (Doc. No. 14 at PageID# 134.) Therefore, according to Plaintiff, the City's Motion for Judgment on the Pleadings is inapplicable to Count One of the Trust's Complaint. (*Id.*)

Further, the Trust responds that it has a constitutionally protected property interest in the Property as rezoned to RVG because the City "conferred a non-rescindable benefit (a constitutionally

protected property interest) to the Trust" because the City "officially promulgated a policy and/or there is a pervasive custom or practice followed in the City relative to residential development" that intentionally prefers and prioritizes the development of RVG-zoned property.  (*Id.* at PageID# 137.) According to the Trust, the City's "pervasive custom" manifested in several ways, including when the City passed a 2010 ordinance shortening the maximum permissible length of cul-de-sacs, thereby reducing the number of residential units that could be serviced by a cul-de-sac road; when it adopted a Comprehensive Plan in 2011 that "prefers and incentivizes RVG District development"; that the City has not approved an R-4 District development since 2001; and that the "City has approved no less than nine (9) RVG District[s] or Planned Development Overlay District[s] (maximum density of between four and eight units per acre) from 2004 to the time of the filing of the Complaint in the instant proceeding." (*Id.*)

On Reply, the City argues that it addressed all of the Trust's claims, including Count One, in its initial Motion because all of the Trust's claims fall explicitly "within the ambit of the Fifth or Fourteenth Amendments, and that each claim stems from Mentor's discretionary denial of Plaintiff's rezoning request." (Doc. No. 16 at PageID# 150.)  The City states that its Motion clearly argued that the Trust's lack of a constitutionally protected property interest in the Property as rezoned to RVG is fatal to all of the Trust's claims.  (*Id.*)  Consequently, the City requests judgment in its favor on Count One of Plaintiff's Complaint.  (*Id.*)

As an initial matter, the Court notes that the Trust does not clearly articulate its four claims in light of the Sixth Circuit's zoning claims case law.  However, the Court will construe the Trust's claims according to the six categories delineated by the Sixth Circuit in *Pearson v. City of Grand Blanc*:

8

1. *Just compensation takings claim.* Plaintiff claims that the zoning applied to his land constitutes a taking of his property without just compensation in contravention of the Fifth Amendment, the remedy sought being the just compensation.

2. *Due process takings claim.* Plaintiff claims that the zoning applied to his property goes too far and destroys the value of his property to such an extent that it amounts to a taking by eminent domain without due process of law. The remedy sought is invalidation of the zoning regulation.

3. *Arbitrary and capricious substantive due process claim.* Plaintiff claims that the zoning regulation is arbitrary and capricious in that it does not bear a substantial relation to the public health, safety, morals, or general welfare. Two further subcategories may be discerned under this heading: (a) facial and (b) as applied.

4. *Equal protection.* Either based on suspect class, invoking strict scrutiny, or mere economic discrimination.

5. *Procedural due process.* Although not discussed by the Eleventh Circuit, there is, of course, a fifth category where plaintiff claims deprivation of procedural due process.

6. *First Amendment.* A category may also be defined when plaintiff claims that a First Amendment right such as freedom of speech or religion is violated by the zoning ordinance.

*Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1215-16 (6th Cir. 1992); *see also Clifty Props., LLC*, *v. City of Somerset*, No. 15-115-GFVT, 2016 WL 7015641, at *2 (E.D. Ky. Nov. 30, 2016) (court construed the plaintiff's unclear zoning claims according to *Pearson*'s six categories).  Therefore, Count One is best construed to contain two claims: an "[a]rbitrary and capricious substantive due process claim" and a "due process takings claim."  (*Id.*)  The Court will individually address each claim.

1. **"Arbitrary and Capricious Substantive Due Process Claim."**

To make out a claim for a violation of substantive due process in the context of zoning regulations, a plaintiff must "show 'that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action.'"  *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting

9

*Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir.), cert. denied, 555 U.S. 1062, 129 S.Ct. 628, 172 L.Ed.2d 639 (2008)).  A substantive due process claim requires the deprivation of a liberty or property interest.  *Id.*  Whether a property interest exists is a question of state law; "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause."  *Id.* (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005)).

The Trust argues that the City "conferred a non-rescindable benefit (a constitutionally protected property interest) to the Trust" when the City promulgated either an official or unofficial policy preferring RVG zoning developments over lower-density developments, like R-4 developments.  (Doc. No. 14 at PageID# 137-38.)  The Property was—and remains—zoned as R-4, lower density than RVG.  The Trust's argument appears to be that it assumed, based on the City's previous treatment of other rezoning requests and stated preference for higher density development, its own rezoning request from R-4 to RVG would be approved as a matter of course.

However, "the law is clear that a party cannot have a property interest in a discretionary benefit, even if that discretion had never been exercised previously."  *EJS Props., LLC*, 698 F.3d at 857.  A "party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary."  *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).  Therefore, the Trust must prove that the City "did not have the discretion to deny [its] use of the land as" an RVG district.  *Silver v. Franklin Tp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992).  "A person's property interest only becomes protected once the benefit is actually conferred."  *Clifty Props., LLC*, 2016 WL 7015641, at *5 (citing *Med Corp., Inc.*, 296 F.3d at 409).  Therefore, "[i]n the zoning context, this results in the following rule: a property

10

owner may have a protected interest in the *existing* zoning classification for his property, and he may have a protected interest in a discretionary benefit, such as a rezoning ordinance, *after* that benefit has been conferred.  But in the interim, a property owner does not generally have a protected interest in a future, rezoned classification of his land."  *Id.* (citing *EJS Props., LLC*, 698 F.3d at 856; *Braun*, 519 F.3d at 573).

Therefore, the Court must determine whether the City had the discretion to deny the Trust's rezoning request.  According to the Mentor Code of Ordinances § 1137.07, the Mentor City Council "*may* adopt, deny, or adopt with modifications the recommendation of the Planning Commission . . . ."  (Doc. No. 13 at PageID# 116 (emphasis added).)  The Trust submitted its rezoning application to the City on August 2, 2019.  (Doc. No. 1 at ¶ 28.)  On August 22, 2019, the City Planning and Development Department issued its Staff Report to the City Planning Commission but did not explicitly recommend granting or denying the Trust's rezoning application.  (Doc. No. 1 at ¶ 35; Doc. No. 1-12.)  That same day, the City Planning Commission recommended that the rezoning request be denied.  (Doc. No. 1 at ¶ 38.)  At that point, per M.C.O. § 1137.07, the Mentor City Council *could choose* one of the following options: adopt the Planning Commission's recommendation, deny the Planning Commission's recommendation, or adopt and modify the Planning Commission's recommendation.  On November 6, 2019, the City Council voted 4-3 to adopt the Planning Commission's recommendation, an outcome permitted—but not mandated—under M.C.O. § 1137.07.  (*Id.* at ¶ 39.)

Thus, the Court concludes that the City had the discretion to approve or deny the Trust's rezoning request.  Because the City has such discretion, the Trust "possessed neither a legitimate claim of entitlement" to an RVG rezoning designation "nor a justifiable expectation that the [City]

11

would" rezone the Property to RVG. *Silver*, 966 F.2d at 1036. Therefore, the Trust "possessed no property interest that could support a substantive due process claim." *Id. See also, e.g., Med Corp. Inc. v. City of Lima*, 296 F.3d 404, 410 (6th Cir. 2002); *Braun*, 519 F.3d at 573 ("[W]e are unable to find any cognizable property right that triggers due process protections. . . . In order to have a property interest in a benefit, a person must have more than a desire for it or unilateral expectation of it; rather, he must have a legitimate claim of entitlement to it—in this case, a legitimate claim or an entitlement to a rezoning . . . .") (internal quotations omitted).

The Trust argues that the City conferred a non-rescindable benefit on the Property partly through the City's adoption of the 2011 Comprehensive Plan and partly through the City's consistent preference for higher-density developments. (Doc. No. 14 at PageID# 137-38.) According to the Trust, the City explicitly incentivized RVG development in its Comprehensive Plan. (*See* Doc. No. 1-7 at PageID# 60.)

This argument is unpersuasive. The Trust finds itself in a strikingly similar situation to the plaintiff in *Bauss v. Plymouth Tp.* There, the defendant municipality also denied the plaintiff's rezoning request. *Bauss v. Plymouth Tp.*, 408 F. Supp. 2d 363, 364-66 (E.D. Mich. 2005). The plaintiff alleged that he had a property interest in his land as rezoned because, among other reasons, the municipality adopted a Master Plan that preferred the type of zoning the plaintiff sought. *Id.* The District Court disagreed. *Id.* at 367. According to the court, the plaintiff claimed "to have a property interest in a zoning that never existed. The only property interest Plaintiff has is an interest in the property as he purchased it, R–1–H. This zoning never changed. Therefore, Plaintiff does not have the protectable property interest he claims. Under the unamended 1993 Master Plan, the Board of Trustees still had discretion to deny the application for a zoning variance." *Id.* at 367-68. The court

12

also wrote that "[a] Master Plan is a guide designed for making specific land use decisions. If a township is given authority to create a Master Plan 'for the physical development of the municipality,' then it must have authority to make zoning variances based on that Plan. A Master Plan does not automatically re-zone property; it is merely one criteria used in deciding whether to approve a zoning variance request." *Id.* at 368.

The same is true here. The Trust claims to have a property interest in RVG zoning—but the Property has only ever been zoned as R-4. Per M.C.O. § 1137.07, the City retained the discretion to adopt, deny, or amend zoning requests. Further, the Comprehensive Plan's very language makes plain the amount of discretion the City retains throughout the zoning application process:

- "This plan also *recommends* increasing the percentage of required open space in an RVG project to 20-30%,"
- "The plan *recommends* a maximum density of 3-5 units per acre,"
- "Smart growth is a movement whose *goal* is accommodating development and growth, while also considering and addressing its negative effects,"
- "*General principles* [of Smart Growth] to follow include . . . ,"
- "In addition to the goals listed in section 4.8, the plan *recommends* the City view future development and, more importantly, redevelopment initiatives with the Balanced Growth and Smart Growth *principles* in mind," and
- "***Recognize that sites must be evaluated for density and housing type suitability on their own merits and in accordance with the other policies and general design concepts of this plan.***"

(Doc. No. 1-7 at PageID# 60-63 (emphasis added).) As in *Bauss*, the City's Comprehensive Plan "is a guide designed for making specific land use decisions," and it "does not automatically re-zone property . . . ." *Bauss*, 408 F. Supp. 2d at 368. The City's decision to approve or deny zoning applications remains "wholly discretionary." *Med Corp. Inc.*, 296 F.3d at 410.

The Trust also argues that the City conferred a non-rescindable benefit when it repeatedly approved higher-density rezoning requests over the course of the last fifteen years. (Doc. No. 14 at PageID# 137.) The Trust alleges that the City approved no fewer than nine RVG or Planned

13

Development districts between 2004 and 2019.  (*Id.*)  Again, the Trust suggests that it can claim a property interest because it expected to receive the same RVG rezoning designation as other properties.  This argument is also unavailing.  The Sixth Circuit has stated that "[t]he law is clear that a party cannot have a property interest in a discretionary benefit, even if that discretion had never been exercised previously."  *EJS Props., LLC*, 698 F.3d at 857.  The Trust cannot establish that it had a constitutionally protected property interest in the Property as rezoned because the City retained discretion to either adopt, deny, or modify the recommendation of the City Planning Committee.

Because the Trust cannot establish a property interest in the Property as rezoned to RVG, its arbitrary and capricious substantive due process claim fails as a matter of law.

2. **"Due Process Takings Claim."**

In Count One, the Trust also claims that the zoning is invalid because it is "confiscatory, unconstitutional, and renders the Property economically non-viable as zoned."  (Doc. No. 1 at ¶ 46.) The Trust seeks a declaration that the present zoning is invalid.  (*Id.*) As discussed *supra*, the Sixth Circuit recognizes six categories of federal zoning claims.  *Pearson*, 961 F.2d at 1215-16.  This particular allegation most closely resembles the second *Pearson* category, "Due Process Takings Claim: Plaintiff claims that the zoning applied to his property goes too far and destroys the value of his property to such an extent that it amounts to a taking by eminent domain without due process of law.  The remedy sought is invalidation of the zoning regulation."  *Id.*  Thus, the Court will apply the due process takings claim analysis.

A due process takings claim "exists where a zoning regulation destroys the value of the plaintiff's property so that it 'amounts to a taking by eminent domain without due process of law.'" *Tri-Corp Management Co. v. Praznik*, 33 F. App'x 742, 747 (6th Cir. 2002) (quoting *Pearson*, 961

14

F.2d at 1215-16).  According to the Sixth Circuit, "a governmental entity violates due process and creates a due process takings claim only when its regulation is equivalent to an appropriation of property through eminent domain or physical possession."  *Id.*

A due process takings claim is predicated on the Trust demonstrating a constitutionally protected property interest in the Property as rezoned to RVG.  As discussed *supra*, the Trust cannot establish that it had a property interest in the Property as rezoned to RVG.  Thus, the Trust's due process takings claim fails as a matter of law.

The Trust cannot establish a constitutionally protected property interest in the Property as rezoned to RVG.  Thus, both of its claims within Count One fail as a matter of law.  The City is entitled to judgment in its favor with respect to Count One.

**B.    Count Two**

In Count Two, the Trust alleges that the current R-4 zoning "is unreasonable and destroys the value of the Property to such an extent that it amounts to and is a taking of the Trust's property interest in the Property without due process of law."  (Doc. No. 1 at ¶ 50.)  The Trust also alleges that the current R-4 zoning is invalid under the Fifth and Fourteenth Amendments because, "as applied to the Property, [it] is arbitrary, capricious, unreasonable, confiscatory, and unconstitutional since such Property cannot be used in an economically viable manner thereunder."  (*Id.* at ¶ 51.)  The Trust also alleges that the current R-4 zoning is invalid under the Fifth and Fourteenth Amendments because the designation "does not substantially advance a legitimate governmental interest in the health, safety, morals, or welfare of the residents of the City and denies the Trust the equal protection of the law."  (*Id.* at ¶ 52.)

15

In its Motion, the City argues that all of the Trust's due process claims, whether substantive or procedural, fail because the Trust cannot establish that it has a constitutionally protected property interest in the Property as rezoned to RVG.  (Doc. No. 13 at PageID# 121.)  Because the Trust cannot establish its property interest, the Trust is unable to demonstrate that it was deprived of any property. (*Id.* at PageID# 122.)  The City also argues that the Trust's takings claims fail because "[a]n essential element of a Plaintiff's Fifth Amendment takings claim is a property right that has been taken away," but the Trust never had any property taken away.  (*Id.* at PageID# 126.)  The Trust retains its property interest in the Property as currently zoned and was never entitled to an automatic grant of its request to rezone the Property to RVG.  (*Id.*)

The City also argues that the Trust's claims fail "to the extent that they sound in equal protection."  (*Id.* at PageID# 124.)  First, the City argues that the Trust's equal protection claims do not concern fundamental rights or a suspect class, and therefore, the Trust's claims must be based on a "class-of-one" theory.  (*Id.*)  The City argues that the Trust cannot succeed on a class-of-one theory because the Trust cannot establish that it was similarly situated to any other individual or business who have had their rezoning requests approved.  (*Id.* at PageID# 124-25.)  The City further argues, even if the Trust could demonstrate that it was similarly situated to other property owners, "this Court should conclude that Mentor had a legitimate governmental purpose for denying Plaintiff's rezoning request in light of the considerable deference afforded a municipality's decisions under the rational basis standard."  (*Id.* at PageID# 125-26.)

In its Memorandum in Opposition, the Trust argues that it holds a constitutionally protected property interest in the Property as rezoned for the purposes of its due process and takings claims. The Trust argues that the City "officially promulgated a policy and/or there is a pervasive custom or

16

practice followed in the City" that incentivized and preferred higher-density zoning and development, including the adoption of the 2011 Comprehensive Plan, and approval of at least nine higher-density rezoning requests between 2004 and 2019.  (Doc. No. 14 at PageID# 137.)  The Trust argues that, as a result, "the City conferred a non-rescindable benefit (a constitutionally protected property interest) to the Trust."  (*Id.* at PageID# 138.)

With respect to its takings claims, the Trust argues that its current R-4 zoning designation, as applied to the Property, "fails to substantially advance the legitimate governmental interest of" the welfare of the City's residents, "is arbitrary, capricious, unreasonable and confiscatory and renders the Property economically non-viable."  (*Id.* at PageID# 142.)

With respect to its equal protection claims, the Trust argues that its claim involves a fundamental right because the Fifth and Fourteenth Amendments guarantee no person shall be deprived of property without due process of law.  (*Id.* at PageID# 138.)  Further, the Trust argues that its equal protection claims also succeed because the Trust is a "class of one," was treated differently than other similarly situated property owners, and no rational basis exists "for such difference in treatment."  (*Id.* at PageID# 139.)  The Trust argues that it is similarly situated to six other developments that received higher-density rezoning approvals between 2007 and 2020.  (*Id.* at PageID# 140.)  In particular, the Trust argues that the subdivision it sought to develop on the Property is "materially identical and/or similarly situated" to another subdivision, the Woodlands of Mentor. (*Id.*)  Both the Property and the Woodlands are similar in acreage, number of proposed units, number of access points, and quantity of dedicated open space.  (*Id.*)  The Property and the Woodlands also fit within the maximum RVG density limitations and were designed by the same company.  (*Id.*)  The Trust argues that the brief gap in time between the Woodlands' development and the Trust's rezoning

17

request does not destroy its "similarly situated" status because there "has been absolutely no change in the City's policy" of RVG preference.  (*Id.*)

In its Reply, the City argues that the Trust's rezoning request is discretionary, and that the City was not mandated to grant the Trust's rezoning request.  (Doc. No. 16 at PageID# 148.)  The City again argues that the Trust cannot establish a property interest in the Property as rezoned to RVG "because a party cannot possess a property interest in the receipt of a benefit when [the City's] decision to award or withhold the benefit is wholly discretionary."  (*Id.* at PageID# 151.)  The City argues that the Trust's failure to establish a property interest is fatal to its due process and takings claims.  (*Id.* at PageID# 151, 155.)

The City also argues that the Trust's equal protection claims fail.  First, the City argues that Plaintiff's claims "do not concern a fundamental right" and that the Trust's "Opposition argues this point without citation."  (*Id.* at PageID# 153.)  The City further argues that the Trust's "class of one" theory fails because the Trust fails to establish that it is similarly situated to other property owners "in all relevant aspects."  (*Id.* at PageID# 154.)  The City argues that, with respect to the Property and the Woodlands, the few years between the Woodlands' approval and the Trust's denial "is enough to destroy similarly situated status."  (*Id.*)  Further, even if the Trust was similarly situated to other property owners, the Court must grant broad deference to the City under rational basis review.  (*Id.* at PageID# 155.)

With an eye towards *Pearson*, Count Two is best construed to contain three claims: a due process takings claim (Doc. No. 1 at ¶¶ 50, 51), an arbitrary and capricious substantive due process claim (*id.* at ¶ 51), and an equal protection claim (*id.* at ¶ 52).

18

The Trust's due process takings and substantive due process claims are identical to the due process takings and substantive due process claims it alleged in Count One.  *See supra.*  Therefore, the Court finds that these claims fail as a matter of law because the Trust cannot establish a constitutionally protected property interest in the Property as rezoned to RVG.  The Court will now address the Trust's remaining claim in Count Two, its equal protection claim.

The Equal Protection Clause states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.  The Equal Protection Clause "protects similarly situated individuals against disparate treatment through government action that 'either burdens a fundamental right, targets a suspect class, or has no rational basis.'"  *Center for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 3d 639, 680 (S.D. Ohio 2016) (quoting *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)).  The Trust argues that it prevails on its equal protection claim on two theories: first, that its claim involves a fundamental right, and second, on a "class of one" theory.

The Trust asserts—with no support—that its equal protection claim involves a fundamental right.  It does not.  A "fundamental right" is a right either explicitly or implicitly guaranteed by the Constitution.  *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 33, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).  The right to a certain zoning outcome is not a right either explicitly or implicitly guaranteed by the Constitution.  *See, e.g., Center for Powell Crossing*, 173 F. Supp. 3d at 680.  Therefore, the Court finds that the Trust cannot prevail on its equal protection claim based on a fundamental right theory.

The Court now turns to the Trust's "class of one" theory.  To prevail on this theory, the Trust must establish that it suffered "disparate treatment from similarly situated individuals and that the

government actors had no rational basis for the difference . . . or that the 'challenged government action was motivated by animus or ill-will . . . .'"  *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 650 (6th Cir. 2015) (citing *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 549 (6th Cir. 2007); quoting *EJS Props., LLC*, 698 F.3d at 864).  To be similarly situated, a comparator business "must be similar in 'all relevant respects.'"  *Id.* (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).  Courts should not demand precise correlation but rather should seek relevant similarity.  *Center for Powell Crossing*, 173 F. Supp. 3d at 681.

Additionally, a plaintiff must also establish that the government actor lacked a rational basis for the challenged action.  A plaintiff can establish the lack of a rational basis "if it either (1) 'negat[es] every conceivable basis which might support the government action or [(2)] demonstrat[es] that the challenged government action was motivated by animus or ill-will.'"  *EJS Props., LLC*, 698 F.3d at 865 (quoting *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005)).

The Trust contends it is similarly situated to five properties that received rezoning approvals between 2007 and 2020.  (Doc. No. 14 at PageID# 139-40.)  According to the Trust, these properties ranged in size from six to nineteen acres.  (*Id.*)  However, for four of these developments, the Trust offers no further detail beyond the year the City approved the rezoning request and the size of the property rezoned.  (*Id.*)  On those bare facts, it is impossible for the Court to determine whether the Property and these four developments are similar in all relevant respects.

However, the Trust articulates several ways in which it believes it is similarly situated to the Woodlands of Mentor development. (*Id.* at PageID# 140.)  In 2017—only two years before the City denied the Trust's rezoning application—"the City approved the rezoning" of approximately 16 acres "known as the Woodlands of Mentor from the R-4 District to the RVG District, which is materially

20

identical and/or similarly situated to the proposed Echo Hill Manor Subdivision . . . ."  (*Id.*)

According to the Trust, both developments share the following similarities:

- Both are roughly the same size (the Woodlands is 16 acres; the Property is 16.15 acres).
- Both developments contain roughly the same number of units (the Woodlands contains 37 units; the Trust proposed building 40 units).
- Both developments have two access points from the subdivision onto public roads.
- Both developments provide for five acres of dedicated open space.
- Both developments fit within the maximum density envisioned under the RVG designation.
- Both developments were designed by Polaris Engineering and Surveying, LLC.

(*Id.*)

Relying on *EJS Props., LLC*, the City argues that the two years between the Woodlands' rezoning approval and the Trust's rezoning denial are enough to destroy the Property's similarly situated status with the Woodlands.  (Doc. No. 16 at PageID# 154.)  However, *EJS Props., LLC* only suggests that timing "*may*" affect similarly situated status: "Gaps in time and context *may* suggest a change in policy rather than differential treatment."  *EJS Props., LLC*, 698 F.3d at 866 (citing *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009)).  In *Taylor*, the court noted that the plaintiff's rezoning proposals "were considered by two differently-composed City Councils," so the gap in time between proposals was particularly relevant to the similarly-situated inquiry.  *Taylor Acquisitions, L.L.C.*, 313 F. App'x at 836.  According to the Sixth Circuit, timing of rezoning requests is one factor in the similarly-situated analysis: "In the land-use context, timing is critical and, thus, can supply an important basis for differential treatment. . . . [C]ourts must be sensitive to the possibility that differential treatment—especially differential treatment following a time lag—may indicate a change in policy rather than an intent to discriminate.  Consequently, the most reliable comparisons are likely to be from roughly the same time frame."  *Id.* (quoting *Cordi-*

*Allen v. Conlon*, 494 F.3d 245, 253 (1st Cir. 2007)).  The City fails to provide any reason why the brief gap in time between the Woodlands' 2017 rezoning approval and the Trust's 2019 rezoning denial destroys any similarly situated status, beyond the existence of the gap itself.

However, even assuming *arguendo* that the Trust is similarly situated to the Woodlands, the Trust's equal protection claim fails because the Trust fails to "'allege facts sufficient to overcome the presumption of rationality that applies'" to a municipality's actions.  *In re City of Detroit*, 841 F.3d 684, 701 (6th Cir. 2016) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)).  In *In re City of Detroit*, the Sixth Circuit discussed the standard for adequately pleading an equal protection claim under the rational basis standard:

> "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (internal quotation marks omitted). Because no fundamental right or suspect class is involved in this case, plaintiffs bear the burden of establishing DWSD's policy "is not rationally related to any legitimate public interest." *Ondo v. City of Cleveland*, 795 F.3d 597, 608 (6th Cir. 2015).
>
> **This is an uphill climb.** Under the rational basis standard, government action is afforded a strong presumption of validity, and we will uphold it as long as "there is a rational relationship between the disparity of treatment and some legitimate government purpose." *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). "A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification." *Id.* The policy is presumed constitutional, and the burden is on plaintiffs to negate "every conceivable basis which might support it." *Id.* at 320, 113 S.Ct. 2637 (citation omitted). Such deference is based on "a paradigm of judicial restraint." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty.*, 430 F.3d 783, 791 (6th Cir. 2005) (citation omitted). The judiciary does not "sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Heller*, 509 U.S. at 319, 113 S.Ct. 2637 (citation omitted). Our "Constitution presumes that . . . improvident decisions will eventually be rectified by the democratic

22

> process and that judicial intervention is generally unwarranted no matter
> how unwisely we may think a political branch has acted." *TriHealth*, 430
> F.3d at 791 (citation omitted).
>
> Plaintiffs assert that *Heller*'s standard of presumed rationality is
> inapplicable in the Rule 12(b)(6) context. In their view, requiring an equal
> protection claimant to "incorporate into their pleadings lengthy lists of
> rebuttable rationales for challenged legislation" is "an impossible" task at
> odds with *Twombly*'s holding that a complaint need only include enough
> facts to "raise a right to relief above the speculative level." (Appellants' Br.,
> at 27 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955)). Plaintiffs are
> mistaken.
>
> *Heller* applies at the pleadings stage. *Midkiff*, 409 F.3d at 770. "To survive
> a motion to dismiss" in the rational basis context, "a plaintiff must allege
> facts sufficient to overcome the presumption of rationality that applies to
> government classifications." *Wroblewski v. City of Washburn*, 965 F.2d
> 452, 460 (7th Cir. 1992).

*In re City of Detroit*, 841 F.3d at 701 (emphasis added).

In this case, the Trust does not allege facts in its Complaint that are sufficient to rebut the presumption of rationality to which the City is entitled. In *City of Detroit*, the Sixth Circuit distinguishes another case, *Bower v. Vill. of Mount Sterling*, in which the plaintiff alleged that the municipality violated his equal protection rights when it failed to hire him as a police officer in the same manner as other officers. *Id.* at 702 (citing *Bower v. Vill. of Mount Sterling*, 44 F. App'x 670, 672 (6th Cir. 2002)). In *Bower*, the plaintiff overcame "the presumption of rationality" in the municipality's decision by alleging facts to rebut the two most likely non-discriminatory reasons offered by the municipality as to why it failed to hire him. *Id.* According to the Sixth Circuit, *City of Detroit* differed from *Bower* because the *City of Detroit* plaintiffs' complaint "include[d] no facts rebutting the likely non-discriminatory reasons DWSD may treat residential and commercial customers differently." *Id.* The Sixth Circuit noted that the city of Detroit had many reasons that

Case: 1:20-cv-00058-PAB  Doc #: 18  Filed:  09/10/20  24 of 25.  PageID #: 185

may have justified the plaintiffs' disparate treatment and that, "[a]bsent facts sufficient to overcome any of these explanations, plaintiffs' assertion that there is no rational basis for the difference in treatment is a legal conclusion not entitled to the assumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

In the case at bar, the Trust alleges no facts in its Complaint to negate potential explanations for the City's decision and, therefore, the Trust has not alleged sufficient facts to rebut the presumption of rationality that applies to the City's denial of the Trust's rezoning application.

The City is entitled to judgment in its favor with respect to Count Two.  The Trust cannot establish a constitutionally protected property interest in the Property as rezoned to RVG.  Thus, its due process takings and substantive due process claims within Count Two fail as a matter of law. Because the Trust does not allege facts sufficient to rebut the City's presumption of rationality, the City is also entitled to judgment in its favor on this claim.  However, the Trust may, within fourteen days of the date of this Memorandum Opinion and Order, file an amended complaint setting forth an equal protection claim only, that specifically sets forth allegations to rebut the City's presumption of rationality.

C.      Counts Three and Four

The Trust seeks compensatory and punitive damages in Counts Three and Four for injuries suffered as a result of the City's denial of its rezoning request.  Because the Trust failed to establish any of its underlying claims, the Court need not address the Trust's demands for damages.  The Court finds that the City is entitled to judgment in its favor with respect to Counts Three and Four.

### V.    Conclusion

Accordingly, and for all the reasons set forth above, Defendant's Motion for Judgment on the Pleadings (Doc. No. 13) is GRANTED.  The Court grants Plaintiff a leave of 14 days to file an amended complaint with respect to its equal protection claim.

**IT IS SO ORDERED.**

    *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  September 10, 2020        U. S. DISTRICT JUDGE